David A. Koenigsberg
Menz Bonner Komar & Koenigsberg LLP
444 Madison Avenue, 39th Floor
New York, New York   10022
Tel.:  (212) 223-2100
dkoenigsberg@mbkklaw.com

*Attorneys for Plaintiff-Relator*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF NEW YORK, *ex rel.* SUSAN REGAN,<br><br>        Plaintiffs,<br><br>    -against-<br><br>EXCELLENT HOME CARE SERVICES, LLC, BENJAMIN LANDA, ESTATE OF JENO GUTTMAN, and JOSEPH GOLDBERGER,<br><br>        Defendants. | **FILED UNDER SEAL**<br>**Pursuant to 31 U.S.C.**<br>**§ 3730(b)(2)**<br><br><br>**COMPLAINT** |

-----------------------------------------------------------------x

## Introduction

Relator-Plaintiff Susan Regan ("Relator"), through her attorneys, Menz Bonner Komar & Koenigsberg LLP, makes this Complaint and Demand for Jury Trial under seal, against Excellent Home Care Services, LLC, Benjamin Landa, Estate of Jeno Guttman, and Joseph Goldberger (collectively "Defendants") based upon personal knowledge, relevant documents and information and belief, as follows:

### I.    NATURE OF ACTION

1.    Relator brings this action on behalf of the United States of America ("USA") against Defendants for treble damages and civil penalties arising from the Defendants' violations of the Federal Civil False Claims Act, 31 U.S.C. §§ 3729-3732 (the "False Claims

Act" or "FCA"), and on behalf of the State of New York ("State") for treble damages and civil penalties arising from the Defendants' violations of the New York False Claims Act, N.Y. State Fin. Law §§ 187-194 (the "NYFCA").

2. In connection with providing and billing for home care services by Excellent Home Care, LLC, Defendants (a) knowingly presented, and caused to be presented false and fraudulent claims for payment and approval; (b) knowingly made, used, and caused to be made and used, false records and statements material to false and fraudulent claims; (c) knowingly made, used or caused to be used, false records or statements material to an obligation to pay or transmit money and/or concealed, avoided and decreased an obligation to pay money; and (d) conspired to defraud the USA and the State by getting false and fraudulent claims allowed or paid, all in violation of 31 U.S.C. §§ 3729(a)(1) (A), (B), (C) and (G), and N.Y. State Fin. Law §§ 189(1)(a), (b) & (c).

3. More specifically, this action arises from Defendants' efforts to obtain Medicaid and/or Medicare funds through false and fraudulent claims and statements to Federal and State government agencies receiving federal and state funds. Such false and fraudulent claims and statements concerned claims for providing home care services to persons that Excellent Home Care, LLC was not authorized to treat, namely persons who were not part of the "mentally retarded and developmentally disabled population." By submitting claims for payment for treating persons beyond the scope of its license, Excellent was reimbursed for providing care to persons it was not authorized to treat.

## II.     JURISDICTION

4.      This Court has subject matter jurisdiction over the claims alleged in this Complaint under 28 U.S.C. § 1331 (Federal question), § 1345 (United States as plaintiff) and 31 U.S.C. § 3732(a) (False Claims Act).  This Court has supplemental jurisdiction over the claims asserted under state law pursuant to 28 U.S.C. § 1367(a) and 31 U.S.C. § 3732(b).

5.      This Court has personal jurisdiction over the Defendants named in the Complaint pursuant to 31 U.S.C. § 3732(a), because at least one of the Defendants can be found, resides, and/ or transacts business in the Southern District of New York and because an act proscribed by 31 U.S.C. § 3729 occurred within this District.  Section 3732(a) further provides for nationwide service of process.

6.      This action is not jurisdictionally precluded by the public disclosure bars of either the Federal False Claims Act, 31 U.S.C. § 3730(e) (4), or the New York False Claims Act, N.Y. State Fin. Law § 190(9)(b).  Upon information and belief, there has been no "public disclosure" of the matters alleged herein and this action is not "based upon" any such disclosure. Notwithstanding the foregoing, Relator, through her service as a member of the New York State Public Health Council and the New York State Public Health and Health Planning Council, has "direct and independent knowledge" of the instant allegations.  Therefore, to the extent any of these allegations is deemed to have been based upon a public disclosure, Relator is an "original source" of this information within the meaning of the Federal False Claims Act and the New York False Claims Act and is expressly not subject to their public disclosure bars.

### III.  VENUE

7. Venue is proper in the Southern District of New York, under 28 U.S.C. §§ 1391(b) and (c), and 31 U.S.C. § 3732(a), because (a) the Defendants reside in this District, (b) a substantial part of the events or omissions giving rise to the violations of 31 U.S.C. § 3729 alleged in the Complaint occurred in this District, or (c) because at least one of the Defendants can be found and transacts business within this District.

### IV.  PARTIES

8. The United States and the State are the real parties in interest plaintiffs in this action. The United States provides 100% of the funding for the Medicare program and no less than 50% of the funding for the New York Medicaid program. The State provides 50% of the funding for the Medicaid program in New York State.

9. Relator Susan Regan is a resident of the State of New York and was a member of the New York State Public Health Council and its successor council, the Public Health and Planning Council, from 1995 until 2013. She served as a member of the Establishment Committee and its successor committee, the Establishment and Project Review Committee during that entire time, and as Chair of the Establishment Committee from 1998 to 2010.

10. Defendant Excellent Home Care Services, LLC is a proprietary special needs Certified Home Health Agency, located at 91-93 South Third Street, Brooklyn, NY 11211 ("Excellent"). .

11. Defendant Benjamin Landa, a resident of Brooklyn, New York, has been and continues to be a 50% owner and the Managing Member of Excellent since its inception in 1998.

12. Defendant Joseph Goldberger, a resident of Brooklyn, New York, has been an employee of Excellent since its inception. Goldberger has extensive ties and interests in the health care business and has controlled 50% of Excellent through his father-in-law, Jeno Guttman, who prior to becoming a part owner of Excellent in 1998, had no prior experience in the health care business.

13. Defendant Estate of Jeno Guttman has been and continues to be a 50% owner of Excellent. Jeno Guttman, who resided in Brooklyn, New York, was a 50% owner of Excellent until he died in December 2007 at the age of 88. Following his death, Excellent applied to the Department of Health to re-organize the ownership of Excellent such that Landa would own 20%, Ryvkie Goldberger, Guttman's daughter and Joseph Goldberger's wife, would own 30.75%, Toby Weinberger would own 30.75%, Lori Fensterman would own 13.5%, and Joseph Treff, Esq., would own 5%.[1] This was to be accomplished through the purchase and sale of these interests from Landa and the Estate. Excellent applied for approval of these transactions several times since 2008, but the applications were deferred repeatedly and never approved, the last time in August 2011, when the application to change the ownership structure was removed from the agenda of the Public Health and Health Planning Council at the applicant's request.

## V. FACTUAL BACKGROUND

14. The home health care system was established in New York in 1977 with the goal of de-institutionalizing nursing home care and to allow elderly and incapacitated persons to receive health care services in their own homes rather than in a nursing home setting.

15. In 1994, Governor Mario Cuomo, in response to reported abuse of the home care system, imposed a moratorium on all new home care licenses.

---

[1] Changes of ownership of a CHHA must be approved by the Department of Health. See N.Y. Public Health Law § 3611-A; 10 NYCRR §§ 760.13, 760.14, and 760.15.

16. Several years later, Governor George Pataki agreed to permit a few new home care agencies to be licensed to care for persons who were developmentally disabled and/or mentally retarded, as the term was used at the time. Special-needs CHHAs such as Excellent, were established for the special purpose of delivering Medicaid and Medicare covered home care services to individuals who otherwise would require more costly institutionalized services by the Office of Mental Health ("OMH") or by the Office of Mental Retardation and Developmental Disabilities ("OMRDD"). [2] Under Department of Health rules, special-needs CHHAs are restricted in their outreach and marketing efforts to defined groups of special-needs individuals.

17. On June 26, 1998, Benjamin Landa, the operator of several long term care facilities in the New York City metropolitan area, applied to the State for a license on behalf of Excellent, a proposed limited liability company, to establish a CHHA to serve residents in Kings, Queens, Bronx, New York and Nassau Counties. Per the application, the "program will be limited to the mentally retarded and developmentally disabled population (OMRDD) delivered from an office in Brooklyn." The application identified Landa as a 50% owner and Jeno Guttman as the other 50% owner. Guttman had no prior experience in the health care business, but was the father-in-law of Joseph Goldberger, a large contributor to Governor Pataki's 1994 election campaign.

18. At a public hearing held on October 15, 1998, Relator Susan Regan stated that the exception to the moratorium on new CHHAs was made for special needs CHHAs where there was an identified need and stated that the licensing of special needs CHHAs should not serve as a way around the moratorium to provide home care services to the general population. During the hearing, it was determined that Excellent would have to provide periodic reports to

---

[2] OMRDD referred to the Office of Mental Retardation and Developmental Disabilities, a New York State agency, now known as the Office for People With Developmental Disabilities (OPWDD).

the State about the services Excellent provided to the developmentally disabled population in compliance with its license.

19. On October 30, 1998, the Public Health Council passed a resolution that approved Excellent's application to establish a CHHA to serve the residents of Kings, Queens, Bronx, New York and Nassau counties, "with the program limited to the mentally retarded and developmentally disabled population . . . ."

20. Under New York's rules for special needs CHHAs such as Excellent, this limitation meant that it could not advertise as or represent itself as a CHHA with approval to provide services to the general population. In addition, the limitation of its license required that if an individual who does not meet the criteria of the population for which Excellent was approved to serve requested services, Excellent was supposed to make a referral to another CHHA and document the referral in the individual's record. Excellent knowingly ignored these limitations and procedures.

21. For example, Excellent deliberately and knowingly conducted its business so as to ignore the limitation on its authority and held itself out as a general purpose CHHA. For example, the following statements have appeared on Excellent's web site since at least 2009:

- "We serve the needs of adult and pediatric patients who require home health care in the comfort of their home."

- "Excellent Home Care provides home health care service in the New York City Area."

- "Excellent Home Care Services home health aides work with elderly or disabled persons who need more extensive care than family or friends can provide. Some help discharged hospital patients who have relatively short-term needs."

- "Excellent Home Care Services provides Geriatric Care Management in [the] following New York counties: New York (Manhattan), Kings (Brooklyn), Queens, Bronx and Nassau."

- "Our Adult & Elderly Care is actually combining our other home care services in one package for elderly people in their own home."

No statement on the web site discloses that Excellent's services are "limited to the MR/DD population" as set forth in its operating certificate.

22. Excellent did not begin operating the CHHA business until November, 2004. The first report about its operations stated that in 2006 less than 20% of Excellent's clients were from the developmentally disabled population. In 2008, the developmentally disabled represented less than 5% of its clients and in 2009, only 3%. At the same time, Excellent reported revenues of over $93 million, mostly from Medicaid, in 2007 and 2008, with gross profits of $23 million in those two years alone. After the Public Health Council directed the Department of Health to improve enforcement of the special needs rules in 2010, by June 2012, Excellent reported that only 58% of its clients were from the developmentally disabled population.

23. On April 16, 2012, Excellent submitted an application to convert its special needs CHHA to a general purpose CHHA so that it would be in a position to provide long term care with the managed long term care plans being developed pursuant to Governor Andrew Cuomo's Medicaid Redesign initiatives. At a public hearing held on May 23, 2013, Relator Regan, citing the history of Excellent's failure to comply with and abuse of its limited license, voiced her objection to approving the application to convert from a special needs CHHA to a general purpose CHHA on the basis that Excellent had fraudulently exceeded the scope of its license and defrauded the Medicaid program of hundreds of millions of dollars. At the meeting, Relator called for the Public Health and Health Planning Council to refer the matter for investigation and civil or criminal prosecution. The Council did not act upon her

recommendation nor has the Council approved the application to convert to a general needs CHHA.

## VI. THE FALSE CLAIMS ACTS

### A. The False Claims Act

24. The False Claims Act, 31 U.S.C. §§ 3729 *et seq.*(the "FCA") prohibits the submission of false or fraudulent claims for payment to the United States or the making of false statements for the purpose of causing a false claim to be paid. The FCA provides that any person who knowingly submits, or causes to be submitted, false or fraudulent claims to the government for payment or approval is liable for a civil penalty of up to $11,000 for each claim, plus three times the amount of damages sustained by the government. The FCA empowers persons with information regarding false or fraudulent claims made to the government, "relators," to bring an action on behalf of the United States and to share in any recovery.

25. For violations occurring before May 20, 2009, the false claims provision of the FCA, at 31 U.S.C. § 3729(a)(1) (1986), provides in pertinent part that a person is liable to the United States government for each instance in which the person "knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . [a] false or fraudulent claim for payment or approval."

26. For violations occurring on or after May 20, 2009, the false claims provision of the FCA, at 31 U.S.C. § 3729(a)(1)(A) (2009), as amended by the Fraud Enforcement and Recovery Act of 2009 ("FERA"), provides in pertinent part that any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" shall be liable to the United States Government.

27. The false statements provision of the FCA, prior to the FERA amendments, provides that a person is liable to the United States Government for each instance in which the person "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." 31 U.S.C. § 3729(a)(2) (1986). As amended by FERA, the false statements provision of the FCA makes liable any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B) (2009).

28. The FCA defines the term "claim" to mean "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government (I) provides or has provided any portion of the money or property requested or demanded; or (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded. . . ." 31 U.S.C. § 3729(b)(2)(A) (2009).

29. The FCA defines the terms "knowing" and "knowingly" to mean that a person, with respect to information: (1) "has actual knowledge of the information"; (2) "acts in deliberate ignorance of the truth or falsity of the information"; or (3) "acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b) (1986); 31 U.S.C. § 3729(b)(1)(A) (2009). The FCA further provides that "no proof of specific intent to defraud" is required. 31 U.S.C. § 3729(b) (1986); 31 U.S.C. § 3729(b)(1)(B) (2009).

B.     **The New York False Claims Act**

30.    The New York False Claims Act provides, in pertinent part, as follows:

§ 188:

1.    "Claim" (a) means any request or demand . . . for money or property that (i) is presented to an officer, employee or agent of the state or a local government or (ii) is made to a contractor, grantee, or other recipient . . . if the state or a local government provides or has provided any portion of the money or property which is requested or demanded . . . .

2.    "False claim" means any claim which is, either in whole or part, false or fraudulent.

3.    "Knowing and knowingly" (a) means that a person, with respect to information: (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information; and (b) require no proof of specific intent to defraud, provided, however that acts occurring by mistake or as a result of mere negligence are not covered . . . .

***

§ 189:

(1) … [A]ny person who . . . (a) knowingly presents, or causes to be presented a false or fraudulent claim for payment or approval; (b) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; [or] (c) conspires to commit a violation of paragraph (a) [or] (b) . . . ;

***

shall be liable to the state or a local government, as applicable, for a civil penalty of not less than six thousand dollars and not more than twelve thousand dollars, plus three times the amount of all damages, including consequential damages, which the state or local government sustains because of the act of that person.

(N.Y. State Fin. Law § 188(1), (2) & (3), and § 189(1)(a), (b), (c), (g), as amended August 13, 2010).

## VII. THE REGULATORY FRAMEWORK

### A. Medicaid Program

31.     Pursuant to Title XIX of the Social Security Act (the Act), the Medicaid program provides medical assistance to low-income individuals and individuals with disabilities. The Federal and State Governments jointly fund and administer Medicaid. At the Federal level, the Centers for Medicare & Medicaid Services (CMS) administer Medicaid. Each State administers its Medicaid program in accordance with a CMS-approved state plan. Although each State has considerable flexibility in designing and operating its Medicaid program, it must comply with applicable Federal requirements. Pursuant to section 1905(b) of the Act, the Federal Government pays its share of a State's medical assistance expenditures under Medicaid based on the Federal medical assistance percentage (FMAP), which varies depending on a State's relative per capita income.

### B. New York State's Medicaid Program

32.     In New York State, the Department of Health ("DOH") administers Medicaid. The DOH agency uses the Medicaid Management Information System (MMIS), a computerized payment and information reporting system, to process and pay Medicaid claims. Medicaid beneficiaries who receive home health services may be acutely or chronically ill with conditions requiring skilled nursing services or conditions requiring only maintenance and supervision. The level of need may range from total dependence to virtual independence.

### C. New York State's Home Health Services Program

33.     Within DOH, the Office of Long Term Care operates the home health services program. Under that program, Certified Home Health Agencies (CHHAs) provide preventive, therapeutic, and/or rehabilitative services to Medicaid beneficiaries.

34. Reimbursement under the Medicaid program is available for home health services provided by CHHAs certified by DOH. According to State regulations at 10 NYCRR § 763.3(a), a CHHA must be able to provide, directly or through contractual arrangement, a minimum of four services: nursing, home health aide, medical supplies/equipment/appliances, and at least one optional service (e.g., physical therapy, occupational therapy).

35. Under DOH regulations, certified home health agencies "must be established by the Public Health Council and possess a certificate of approval issued by the Commissioner, hereafter referred to in this Part as an operating certificate." 10 NYCRR § 761.1(b). Under § 761.2(a), "[n]o home care services agency shall hold itself out to be a certified home health agency . . . unless it possesses [a] valid operating certificate." The "operating certificate shall be posted conspicuously at the principal administrative office of the agency and shall state the health care services the agency is approved to provide; . . . ." 10 NYCRR § 761.2(b).

36. Excellent was authorized to operate a special needs CHHA pursuant to 10 NYCRR § 760.5(e)(i)[3], which provides that the Public Health Council "may recognize the need for additional certified home health agencies . . . where":

> (i) an applicant proposes to provide services to patients that would otherwise require care in a facility licensed by the Office of Mental Health or the Office of Mental Retardation and Developmental Disabilities when the appropriate office documents the number of individuals in the applicant's planning area that are eligible for care in a facility or program licensed by such office who would also be eligible for and would benefit from certified home health agency services, the nature of the certified home health agency services required by such individuals, the expected length of time such individuals would require certified home health agency services and the inability of existing certified home health agencies to provide such services. The Office of Mental Health or the Office of Mental Retardation and Developmental Disabilities

---

[3] This provision has been amended to add a subsection (1) so the current numbering is § 760.5(e)(1)(i).

>shall provide the necessary documentation to the department before an application to provide care for such individuals may be acted on. The certified home health agency case capacity approved to serve any special population under this subparagraph shall not be counted as part of the available resource to satisfy public need for certified home health agency case capacity otherwise estimated under this section; . . . .

In October 1998, pursuant to this authority, the Public Health Council approved Excellent's application to operate as a special needs CHHA limited to service for the developmentally disabled population.

### D. Federal Requirements for Home Health Services

37. Section 1905(a)(7) of the Act authorizes home health services. Pursuant to 42 CFR § 440.70(a), "home health services" are services provided to a beneficiary at the beneficiary's place of residence and "[o]n his or her physician's orders as part of a written plan of care that the physician reviews every 60 days …." Many providers use Form CMS-485, Home Health Certification and Plan of Care, as the required plan of care to document physicians' orders for home health services.

### FIRST CAUSE OF ACTION
(31 U.S.C. § 3729(a)(1) (1986))

38. Relator incorporates by reference paragraphs 1 through 37 of this Complaint, as if set forth fully herein.

39. With respect to claims submitted on or before May 20, 2009, Defendants have knowingly presented, or caused to be presented, to an officer or employee of the United States Government, false and fraudulent claims for payment and approval in violation of 31 U.S.C. § 3729(a)(1) (1986).

40. As a result of this false and fraudulent conduct, the United States Government was damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
(31 U.S.C. § 3729(a)(2) (1986))

41. Relator incorporates by reference paragraphs 1 through 40 of this Complaint, as if set forth fully herein.

42. With respect to claims submitted on or before May 20, 2009, Defendants have knowingly made, used, or caused to be made and used, false records and statements to get false and fraudulent claims paid and approved by the Government in violation of 31 U.S.C. § 3729(a)(2) (1986).

43. As a result of this false and fraudulent conduct, the United States Government was damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
(31 U.S.C. § 3729(a) (7) (1986))

44. Relator incorporates by reference paragraphs 1 through 43 of this Complaint, as if set forth fully herein.

45. With respect to claims submitted on or before May 20, 2009, Defendants, by knowingly overcharging Government accounts, and retaining these overpayments, knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government in violation of 31 U.S.C. § 3729(a)(7) (1986).

46. As a result of this false and fraudulent conduct, the United States Government was damaged in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
(31 U.S.C. § 3729(a)(1)(A) (2009))

47. Relator incorporates by reference paragraphs 1 through 46 of this Complaint, as if set forth fully herein.

48. With respect to claims submitted on or after May 20, 2009, Defendants have knowingly presented, or caused to be presented, false and fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A) (2009).

49. As a result of this false and fraudulent conduct, the United States Government was damaged in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
(31 U.S.C. § 3729(a)(1)(B) (2009))

50. Relator incorporates by reference paragraphs 1 through 49 of this Complaint, as if set forth fully herein.

51. With respect to claims submitted on or after May 20, 2009, Defendants have knowingly made, used, or caused to be made and used, false records and statements material to a false or fraudulent claim in violation of 31 U.S.C. § 3729(a)(1)(B) (2009).

52. As a result of this false and fraudulent conduct, the United States Government was damaged in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**
(31 U.S.C. § 3729(a)(1)(G)(2009))

53. Relator incorporates by reference paragraphs 1 through 52 of this Complaint, as if set forth fully herein.

54. With respect to claims submitted on or after May 20, 2009, Defendants, by knowingly overcharging government accounts, and retaining these overpayments, knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to

pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government.

55. As a result of this false and fraudulent conduct, the United States Government was damaged in an amount to be determined at trial.

### SEVENTH CAUSE OF ACTION
### (N.Y. State Fin. Law § 189(1)(a), (b), (c) & (g))

56. Relator incorporates by reference paragraphs 1 through 55 of this Complaint, as if fully set forth herein.

57. Defendants, by submitting claims for Medicaid reimbursement for home health services for non-developmentally disabled patients, have engaged in a continuous practice of: (a) knowingly presenting, and causing to be presented, to an officer and/or agent of New York State, false and fraudulent claims for payment and approval; (b) knowingly making, using, and causing to be made and used, false records and statements to get false and fraudulent claims paid and approved by New York State; (c) knowingly making, using, or causing to to be made or used, false records or statements material to an obligation to pay or transmit money or property to the state; and (c) conspiring to defraud New York State by getting false and fraudulent claims allowed or paid; all in violation of N.Y. State Fin. Law § 189(1)(a), (b), (c), and (g)..

58. New York State contributes funds to the New York Medicaid program which were in turn paid to Excellent in connection with their claims for Medicaid payments for services provided to Excellent's patients. As a result of this false and fraudulent conduct New York State was damaged.

**PRAYER FOR RELIEF**

WHEREFORE, Relator, on behalf of himself individually, and acting on behalf, and in the name, of the United States of America and of New York State, respectively, demands and prays that judgment be entered against the Defendants as follows:

1. That the Defendants shall be ordered to cease and desist from violating the False Claims Act, 31 U.S.C. §§ 3729-3732 and the New York False Claims Act, N.Y. State Fin. Law §§ 189-194.

2. On the First through Sixth Causes of Action under the False Claims Act, judgment shall be entered against Defendants in the amount of three times the amount of damages the United States has sustained because of Defendants' actions, plus a civil penalty of $11,000.00 for each act in violation of the False Claims Act, as provided by 31 U.S.C. § 3729(a), with interest.

3. That Relator shall be awarded the maximum amount available under 31 U.S.C. § 3730(d) of the False Claims Act for bringing this action, namely, 25 percent of the proceeds of the action or settlement of the claim if the United States intervenes in the matter (or pursues its claim through any alternate remedy available to the United States, 31 U.S.C. § 3730(c)(5)), or, alternatively, 30 percent of the proceeds of the action or settlement of the claim, if the Government declines to intervene.

4. On the Seventh Cause of Action under the New York False Claims Act, judgment shall be entered against the Defendants in the amount of three times the amount of damages New York State has sustained because of Defendants' actions, plus a civil penalty of $12,000.00 for each act in violation of the New York False Claims Act, as provided by N.Y. State Fin. Law § 189(1)(i) & (ii), with interest.

5. That Relator shall be awarded the maximum amount available under N.Y. State Fin. Law § 190(6) of the New York False Claims Act for bringing this action, namely, 25 percent of the proceeds of the action or settlement of the claim if New York State intervenes in the matter (or pursues its claim through any alternate remedy available to New York State, N.Y. State Fin. Law § 190(7)) or, alternatively, 30 percent of the proceeds of the action or settlement of the claim, if New York State declines to intervene.

6. That Relator shall be awarded all reasonable expenses necessarily incurred in prosecution of this action, plus all reasonable attorneys' fees and costs, as provided by 31 U.S.C. § 3730(d) and/or N.Y. State Fin. Law § 189(3) and § 190(7).

7. And, such other relief shall be granted in the favor of the United States, New York State and the Relator as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands trial by jury.

Dated: New York, New York
August 28, 2013

Respectfully submitted,

MENZ BONNER KOMAR & KOENIGSBERG LLP

By: _____
David A. Koenigsberg

444 Madison Avenue, 39th Floor
New York, New York 10022
Tel.: (212) 223-2100
Email: dkoenigsberg@mbkklaw.com

*Attorneys for Relator Susan Regan*